Good morning. May it please the Court, Counsel. My name is James Becker. I represent the appellant Kevin Bennett. We're here today on a single issue of interest to the Court. And our position, of course, is that the district court did commit reversible error by failing to suppress evidence based upon a warrant issued that did not authorize the use of a cell site simulator. Justice Breyer, you can look up and speak a little less fast for me. And you can move the mic if it helps. Kevin Bennett Certainly, Your Honor. Justice Breyer Or the panel. Kevin Bennett Is that better? You know, one thing that was interesting about the briefing was that I think each party took some pains to sort of characterize the other side as being hyper-technical and the position respectively was commonsensical in an effort to really just boil this down to the essence. I mean, the fact is we've got a warrant issued by a judicial officer that does not authorize the use of a cell site simulator. There's nothing explicit in that warrant. Moreover, the structure of the warrant precludes the argument that somehow either the hyper-technical caption or the manner of execution in the application which was not incorporated into the warrant actually issued. The structure of the warrant is directed at T-Mobile colon with an enumerated list of things that the judicial officer authorized law enforcement to seek through that third party. Justice Kagan So the CSS technology, that was listed as you mentioned in the means of execution for the warrant. Is there anything that law enforcement would need from T-Mobile to use that technology? In other words, is there a legitimate means of execution by use of the CSS here based on what they would have received from T-Mobile? Chief Justice Alito Not that I'm aware at all, Your Honor. Justice Kagan Okay. Because the magistrate, I think the district court had said that I wanted to confirm that the law enforcement doesn't need T-Mobile to do this. Chief Justice Alito No, Your Honor. And in fact, that I think supports the contention that in a very real way, law enforcement was seeking two warrants in one. They were seeking a warrant for the use of a cell site simulator and they were seeking a warrant for disclosures as well as applications of certain technology through T-Mobile. Justice Kagan And would T-Mobile ever use the CSS? Chief Justice Alito I very much doubt it, Your Honor. I've never seen an occurrence where that's happened. But of course, T-Mobile owns its own cell phone towers. The whole idea behind a cell site simulator is that it's impersonating a cell phone tower to intercept signals that are intended to go from a device to a corporate cell phone tower. Justice Kagan And T-Mobile already has its towers? Chief Justice Alito Correct, Your Honor. Justice Kagan Okay. Chief Justice Alito But doesn't the warrant say any other available precision location information? Wouldn't that cover it? Chief Justice Alito It does, Your Honor, but only after making it clear that whatever that denoted enumerated list is was to be directed to T-Mobile. Although that phrase crops up both in the sort of, I guess, the caption of the application and that caption was transposed over to the order, you know, and this is where Justice Kagan Maybe it would be helpful to understand what how the CSS works. I think you just said information from T-Mobile isn't fed into it? Chief Justice Alito Generally speaking, Your Honor, and I, you know, I'm not going to pretend to be an expert, but my understanding is that CSS technology impersonates a cell phone tower without knowledge of that happening to the user of the cell phone or electronic device. It's an interception through which law enforcement can gather any signal that's coming in, frankly, and is it simply a tool that the government agency uses to, so why would that be any different than an FBI agent obtaining financial records and putting it into a spreadsheet? Chief Justice Alito Well, the distinction here is that the warrant itself is directed towards T-Mobile for the various things that the judicial officer agreed to authorize law enforcement to collect. The use of a cell site simulator is independent of T-Mobile. It's just a tool that law enforcement uses. Justice Kagan So why would it be subject to the search warrant question at all if it's simply a tool that law enforcement uses? Chief Justice Alito Thank you, Your Honor. I apologize. I slightly misunderstood the question. The case law does appear very uniform and consistent that use of a cell site simulator constitutes a Fourth Amendment intrusion. Justice Kennedy Not in this Court yet. Chief Justice Alito No. And that's, I think, part of Justice Kennedy I mean, you're implicitly asking us to decide what we haven't decided. Chief Justice Alito That is correct, Your Honor. I was about to say that some of these issues are of first impression in the Eighth Circuit. However, I don't think there's a disagreement with my counterpart as to the necessity of law enforcement to obtain a warrant in order to use a cell site simulator. So, you know, the things that I would wish to spend just a quick moment on is just Justice Kagan So is the argument that a cell site simulator is more like a tracking device than it is a spreadsheet? Chief Justice Alito Correct, Your Honor. Justice Kagan Okay. Chief Justice Alito It is not a business record. Justice Kagan Okay. Chief Justice Alito It is an active deployment of technology without disclosure to the end user, I suppose. Justice Sotomayor So is the cell site simulator applied to the person's phone activity after the warrant is issued? Is that or is it a tool that analyzes what happened before? Chief Justice Alito Essentially, if this gets to the Court's question Justice Sotomayor Because that would be more like a tracking device. Chief Justice Alito A cell site simulator, yep. Apologies. Justice Sotomayor Yeah. Chief Justice Alito Historically, historically, a cell site simulator is essentially a black box that's inside a law enforcement vehicle. They drive around collecting signals. And then on the basis of that, you know, ostensibly should be advancing their investigation based upon the information. But outside of this circuit, again, case law is clear that that kind of intrusion, the nature of it is such that it constitutes a Fourth Amendment violation and therefore requires a warrant. Justice Sotomayor And so it is post, it is obtaining information post issuance of the warrant. It's not analyzing information that occurred pre? Chief Justice Alito Correct, Your Honor. Justice Sotomayor Okay. So that seems a little more like a tracking device than Chief Justice Alito I think for the purposes of this argument, that's a fair analogy, yes. Justice Sotomayor Thank you. Chief Justice Alito In my quick remaining time, I just want to say a couple of things about good faith because I think if there's an area where our legs may be cut out from under us, it would be that. But I think that there are some clear factors in this particular case that should preclude the application of Leon to this instance. You know, we're talking about what a reasonable officer would believe, okay? And if we're talking about a hypothetical independent reasonable officer, not one who wrote the affidavit application him or herself, a reasonable officer would read this warrant as being directed towards T-Mobile, period. And that Justice Sotomayor As what? Chief Justice Alito As being directed at T-Mobile, period. And to make it even more clear, there's no mention whatsoever in the warrant actually issued authorizing the use of a cell site simulator. Now, my counterpart in the district court gave weight to the fact that in this particular instance the warrant application was written by and executed by the same officer and that somehow this imports a greater sense of reasonableness. However, I don't think that can stand as an argument. First of all, the judge actually did strike two requests made by the applying officer. And so the officer should have been known already on the face of the warrant that there were some things that were trimmed down or different than what he had applied for. So he was on notice that not everything had been incorporated. In doing so, the executing officer should have known that part of his application, the manner of execution section, was not incorporated. And so clearly there were indications that the signing judge was not simply accepting the request wholesale without modification. What about the idea that maybe the law enforcement officer didn't understand that he needed a separate warrant for the cell site simulator? That's why he put it in means of execution and didn't seek the separate warrant. Is that safely on grounds for the government in this? I don't believe so, Your Honor. I mean, there can be various types of errors that are made. Some of them may be forgiven. Some of them may not. In this instance, the best way to separate the wheat from the chaff is to look at the warrant itself. And the warrant that was signed by the judicial officer was directed at T-Mobile with that unambiguously. I mean, it just is. And I'm not sure how to argue — how they can argue around that. And secondly, does not incorporate the manner of execution, does not incorporate the affidavit, and does not mention or authorize the use of the cell site simulator. I mean, I think it's a pretty clear set of circumstances here that what law enforcement did exceeded the scope of the warrant actually issued and violated the particularity requirement. Let me ask this. At the beginning, you — in response to one of Judge Kelly's questions, you said this does not rely on T-Mobile data, the cell site simulator. But when they're driving around, pinging off of cell phones into the black box, aren't they using T-Mobile data to do that? You know, that — Aren't the two related? You know, I don't think — believe so, if I'm interpreting the Court's sort of ultimate point there. I mean, technically, I mean, the device believes it's sending information to T-Mobile, and perhaps it's sort of fashioned in a way that's compatible with T-Mobile systems. And ultimately, again, the person never knows, because the signal proceeds on to a cell phone tower after it's intercepted. It passes through that. But I don't think that — I guess I'm sort of answering the question myself. My understanding is that these cell phone simulators capture any cell phone signal. It's not particular to a provider or a particular corporate entity. It sucks in everything. And so I think that, hypothetically, say there was no actual tower. You weren't getting — But they're focused on your client, who was a T-Mobile customer. So that's the relevant — I assume he was a T-Mobile customer. So that's the relevant provider there. It was based upon a particular phone number. At the time that they applied for the warrant, they had a whole other person in mind. It was the phone number that — Was a T-Mobile customer. That's correct, Your Honor. That is correct. Okay. I see my time is up. Thank you very much, Your Honor. Mr. Nelson. Thank you, Your Honor. May it please the Court. Nathan Nelson on behalf of the United States. I'd like to start by addressing my counsel's contention that this is really two warrants smashed into one because I don't believe that's true. I think when you look at the application and you look at the warrant and you read them as a whole, you can see that the purpose was to get court authorization to obtain precision location information for a particular phone. The affidavit stated the goal was to track and locate the phone, to learn where the drug dealer was staying, and to identify their associates. And the application made clear that officers wanted precision location information through whatever technological means it might be obtained. And it specified certain types of means that come specifically from T-Mobile — GPS and E911 data. But it also made clear that the application was not limited to those specific enumerated kinds of location technology. It said it was also seeking, quote, any other available precision location information. This is both in the caption and the body of the application. But doesn't that still kind of is disconnected from sort of what was repeated in the first argument that it was directed at T-Mobile? I understand what you're saying there. The language is all in there. And I think that the general goal of what law enforcement wanted to do is pretty clear. But what they were asking for in this particular warrant was to seek information from T-Mobile. And by the way, the way we're going to execute this is X, Y, and Z. And the issuing judge issued the warrant regarding T-Mobile. So how do you put those two things together? I don't think anyone is holding up this warrant and application as a model of clarity, Your Honor. We had — the warrant was asking certainly for a lot of different types of information. Pretty much all of it was material that would come from T-Mobile. But what the application made clear is we also want to do this one other thing. In the manner of execution, it specified we want to use a cell site simulator. And the we here is law enforcement. Law enforcement. Correct. And so — Well, does the CSS, when they're taking it out and doing it, are they using T-Mobile data that is part of that or not? I don't believe the record is entirely clear on that point, Your Honor. I can speak to my understanding is similar to what my colleague, Mr. Becker, said, that this is a device that law enforcement has that simulates a strong cell phone tower. And what that does is as they drive around in the area where they believe this phone might be located, it essentially entices other phones in the area to connect to it. And when they connect to it, the phone sends its unique identifier to the essentially fake cell phone tower. And doing that, using that signal that comes directly from the phone, they can identify the precise location or some approximate location for those devices. And I think that's, you know, that's borne out in the manner of execution. Well, those devices here, we're talking about the particular phone number associated with a particular phone that is a customer of T-Mobile, right? Correct. But, Your Honor, as it says in the warrant itself, it doesn't only target the target telephone. It will induce other devices to connect to it. And then law enforcement will see, is that the target telephone? If not, it will disconnect those other devices. So but what I think is important here is law enforcement, yes, wanted a long list of things from T-Mobile, but they were very, very clear, two full paragraphs, hundreds of words, saying they also want to use this one particular additional technology. And I don't know whether you've had — have you had any experience in getting a cell site simulator warrant before? Yes, Your Honor. And I know this is not in the record, but I'm just — I'm just — given the nature of what that device is doing, as you said, it's not going in on one phone number. It's getting — getting everything coming in. And I'm — and I — my limited understanding is there's some concern about sort of a roving search of everybody in the neighborhood. Are those warrants, if you can answer this, are those warrant applications and resulting warrants narrowed in some way to make sure that law enforcement isn't gathering data that is inappropriate for the investigation? I — in my experience, what you see is similar to what's described in the manner of execution paragraph here, namely that the — the warrant application concedes that other devices' data may be captured, but that what law enforcement will do is it will protect the privacy by essentially disconnecting immediately from those devices and making no investigative use of that information. And is that then reflected in the warrant as well? Are those limitations typically reflected in what the — the — in the wording of the warrant that the judge issues? And if you don't know, I mean, this is not part of — I don't — I don't recall specifically if this is language that is — typically appears in the application or then in the warrant itself. I just — I'm not — I can't speak to that, Your Honor. I'm not sure. But the point is here, I think law enforcement made very clear in these two paragraphs exactly what they wanted to do and that they wanted to use this additional technology. And in fact, as the district court found, there was really, in the district court's words, quote, no doubt of the officer's intent to use a CSS. The signing judge was therefore expressly put on notice that law enforcement was going to use the CSS and signed the warrant with — signed the warrant anyway. And like the application, the warrant, yes, it listed specific examples of types of location information that would come from T-Mobile, but it also had this residual authorization to obtain, quote, any other available precision location information. And as the magistrate and the district court found, that language is — is broad enough to include the cell site simulator here. And — and what the district court expressly found is that the signing judge, quote, understood she was signing a warrant that authorized the use of a cell site simulator. Which — which is a little interesting because if — if the way the parties are — are describing a cell site simulator, maybe she didn't understand because it doesn't go to T-Mobile, right? What I can — all I can respond with, Your Honor, is what the district court found. And the district court explicitly found that the signing judge understood what she was signing here, given the information that had been proffered. I'd like to ask you about — about Leon. We've got a kind of an unusual situation here. If you take — if you — if you take this as sort of two warrants in one — applications in one, and the warrant sort of grants half of it, two-thirds of it, the one to T-Mobile, but not expressly the one to law enforcement, do we have any cases where Leon applies in a situation where the officer goes in, asks for two things, gets one, but then acts on the two things he asked for, but that's good faith? I can't — I can't cite any particular case involving the kind of factual scenario, Your Honor. Your Honor is indicating. However, what I think the — maybe the disagreement is here is that, based on the magistrate's finding, based on the district court's I don't think the officer did understand that part of the warrant had not been granted, if that's the way Your Honor sees it. So maybe he didn't understand that he was really asking for two searches? I think that's right. I think what the — from — I think what you see here is from the — this wasn't a warrant asking for the cell site simulator as a separate search. It just viewed the cell site simulator as another means of getting at the sought-after data. What he was asking for is, I want precision location information. The court says, you may have precision location information using any technological means, and the cell site simulator is one of those means. And I think that distinction is important because, you know, the defense cites the — I think it is the Grower v. Ramirez case, which dealt with a warrant that lacked any sort of statement of the things to be seized, and no constitutional particularity. And I don't think that's what we have here. You have a warrant that is particular. You are authorized to obtain precision location information for a specific phone for a specific period. And you — the question is really, what means can you use to get it? And so what I think the closer case here is another case cited by the defendant, Dahlia v. United States, which says that the specificity required by the Fourth Amendment does not generally extend to the means by which warrants are executed. So for those reasons, Your Honor, I believe the warrant authorized the use of a cell site simulator. And in any case, the officers relied in good faith on both the November tracking warrant and the subsequent February 2023 search warrants. And therefore, the district court properly denied suppression in this case. I see my time is up, and I thank the Court for the time. Thank you. I hesitate. You've used your time. I hesitate to say I think we understand the issue, so I'll give you a minute for rebuttal if you want to respond or add anything. Thank you, Your Honor. That's very gracious. I do appreciate it. Just very quickly, not to take advantage of the Court's generosity, the government — I'm sorry, the appellee has repeated over and over again that the application makes clear this, that, and the other. I don't think that's true. When you look at even just at the application, in the portion where it states its request, again, it's a request to T-Mobile, colon, with an enumerated list. It is buried in the manner of execution. It's not up front. It's not clear. And so, yes, there can be room, I think, for some confusion, but the confusion shouldn't accrue to the benefit of law enforcement here when the warrant actually issued directs everything to T-Mobile and does not incorporate the affidavit or the means of execution. It is excluded. The judicial officer also excluded other things, so we know that there was some consideration and intent. But most importantly, just let's get to the principle of the thing here. We cannot sanction the practice of law enforcement to, on their own accord, presume and incorporate their applications. That's flipping, you know, the process here in terms of what should be acceptable to the Court, what the boundaries are of the Constitution of the United States. What matters is the warrant actually issued. That's the good faith issue, isn't it? It's — I see them as related. I think you're not giving enough leeway to the governing law of Leon. I understand. But, you know, the Groh case that we had cited itself as, and we suggested this was the primary case by which the Court could develop some guidance, I mean, that case also makes clear that the application does not save the warrant from facial invalidity. Yes, courts may construe warrants with reference to supporting materials if the warrant uses appropriate words of incorporation, and we don't have those things here. And this — this is opinions from the Eighth Circuit. In your view, would the pending Chaudhry case in the Supreme Court possibly affect this case? I don't believe so. I don't believe so, Your Honor. I actually regard this particular warrant application and warrant as sort of occupying a pretty narrow historical time period. I do think that law enforcement does now apply for explicitly warrants to use cell-site simulator technology, both at the state and federal level. And so this happens to be a time where, during the embracement of this technology by law enforcement, that — Okay. I tend to agree. Thank you, Your Honor. I want to make sure that you weren't intending to urge us or wanted all to urge us. Not at all. Thank you very much, Your Honor. The way you were or whatever.